UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RICHARD SOLDAN,

       Plaintiff,

v.

HEIDI WASHINGTON et al.,

       Defendants.
_____/

Case No. 1:19-cv-657

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss the complaint. Plaintiff fails to state a federal claim, and the Court declines to exercise jurisdiction over any claims arising under state law.

## **Discussion**

**I.**     **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Michigan. Plaintiff

sues the following employees of the MDOC: Director Heidi Washington, Deputy Director Richard Marlan, Parole Board Chairman Michael Eagen, and Hearings Officer Maribeth Zeller.

Plaintiff alleges that, in 2017, while he was on parole, he was charged with a violation of his parole. Defendant Zeller conducted a parole violation hearing on August 24, 2017, and determined that Plaintiff had violated his parole. About a month later, two members of the Parole Board, Sandra Wilson and Sonya Warchok, decided to revoke Plaintiff's parole. That same day, nine members of the Parole Board decided to continue Plaintiff's imprisonment for 60 months. According to the Parole Board's notice of decision, only part of which is attached to the complaint, board members Wilson and Warchok revoked Plaintiff parole because he was guilty of the following parole violation:

> On or about 07/07/17 you engaged in behavior that was assaultive, abusive, threatening and/or intimidating by making threats against Agent Robinson and his family.

(MDOC Parole Board Notice of Action, ECF No. 1-1, PageID.66.)

Plaintiff contends that Defendants authorized policies and procedures that permitted the revocation of his parole without following the requirements of state law and the Due Process Clause of the Fourteenth Amendment. For instance, Plaintiff contends that he did not receive a "written summary" of the evidence against him before his parole violation hearing, and the parole board did not provide "good cause" for the revocation in writing or on the record, which he contends are requirements under state law and *Morrissey v. Brewer*, 408 U.S. 471 (1972). In addition, only two members of the Parole Board made the decision to revoke his parole, but Plaintiff contends that state law requires a majority of a panel of three members to make this decision.

As relief, Plaintiff seeks a declaration that Defendants violated his rights and an injunction requiring a new parole violation hearing with the proper procedures.

2

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

## III. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

3

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff argues that the revocation of his parole was unconstitutional. Generally, a challenge to the fact or duration of physical imprisonment is not the proper subject of a civil rights action brought pursuant to § 1983, but rather should be brought as a petition for habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). A state prisoner cannot make a cognizable claim under § 1983 for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that his conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In other words, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Plaintiff's claim is not barred by the doctrine in *Heck*. Like the plaintiffs in *Wilkinson*, Plaintiff challenges the procedures used to determine whether he was entitled to remain on parole, not the result of that decision. *See Wilkinson*, 544 U.S. at 82 ("Dotson and Johnson seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson) and

4

parole suitability (Johnson).").  And like those plaintiffs, Plaintiff does not seek release; instead, he seeks a new parole hearing.  *See id.* ("Neither respondent seeks an injunction ordering his immediate or speedier release into the community.").  Accordingly, success in Plaintiff's action will not necessarily imply that he is entitled to release; instead, it would mean that he is entitled to a new hearing.  *See id.* ("Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term.").  Thus, *Heck* does not prevent Plaintiff from bringing his claim.

### A. State Law

Plaintiff asserts that state law required the Parole Board to provide him with the following:  (1) before the parole violation hearing, a notice providing a "written summary of the evidence to presented against him," *see* Mich. Comp. Laws § 791.239a(5); (2) a parole violation decision based on the evidence summarized in the notice and based on "good cause stated on the record and included in the written findings of fact provided to the parolee," *see* Mich. Comp. Laws § 791.239a(6); and (3) a revocation decision by a majority of parole board members on a three-member panel, *see* Mich. Admin. Code r. 791.7765.

To the extent Plaintiff relies solely on a violation of state law or procedure, he does not state a cognizable § 1983 claim.  Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Thus, Plaintiff must rely upon a violation of due process in order to assert a viable § 1983 claim.

### B. Due Process (Fourteenth Amendment)

#### 1. Constitutional requirements for parole revocations

Individuals threatened with the revocation of their parole possess a liberty interest that entitles them to minimal due process protections. *Morrissey v. Brewer*, 408 U.S. 471 (1972). First, a parolee has a right to a preliminary hearing to determine "whether there is probable cause to believe he committed a parole violation." *Id.* at 487. The parolee is entitled to notice of the alleged parole violations before the preliminary hearing, an opportunity to appear and present evidence, and an opportunity to question a "person who has given adverse information on which parole revocation is to be based." *Id.* The officer presiding over the hearing should "'state the reasons for his determination and indicate the evidence he relied on . . .' but it should be remembered that this is not a final determination calling for 'formal findings of fact and conclusions of law.'" *Id.* (quoting *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)).

In addition, the parolee has a right to a hearing before a final decision on the revocation of his parole. The minimal due process requirements at the revocation hearing stage include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. The purpose of these requirements is to give the parolee an opportunity to be heard prior to "a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 488.

2. MDOC's policies for parole revocations

According to the documents attached to Plaintiff's complaint, the MDOC has adopted policies consistent with the minimum due process requirements set forth in *Morrissey*. For instance, MDOC Policy Directive 06.06.100 (*see* ECF No. 1-1) provides that a parolee charged with violating his parole first receives a "preliminary parole violation hearing" within ten days after his arrest, to determine if there is probable cause to believe that he violated the terms of his parole, unless the parolee waives the hearing. MDOC Policy Directive 06.06.100 ¶¶ K, L.[1] Before this preliminary hearing, the parolee receives a description of the conditions alleged to have been violated. *Id.* ¶ M. At the hearing, the parolee receives an opportunity to be heard by a hearing examiner, disclosure of the evidence against him, an opportunity to testify and present relevant witnesses and evidence, and an opportunity to confront and cross-examine adverse witnesses. *Id.* ¶ O. After the hearing, the examiner decides whether there is probable cause and prepares a written report summarizing the evidence presented and the basis for the probable cause determination. *Id.* ¶ P. These requirements mirror the requirements set forth in *Morrissey* for a preliminary hearing.

The same is true for the MDOC's policies regarding the process provided before parole is revoked. If probable cause exists, the parolee receives a parole violation hearing, unless the parole violation leads to a felony conviction in state court and a new sentence. MDOC Policy Directive 06.06.100 ¶¶ R, S. Prior to the parole violation hearing, the parolee receives notice of the charges and of the hearing. *Id.* ¶ T. At the hearing itself, the parolee receives the following: disclosure of the evidence against him; an opportunity to testify and present witnesses and evidence; an opportunity to confront adverse witnesses; and an opportunity to present evidence in

---

[1] The policy attached to the complaint states that it became effective on July 1, 2018, after the events at issue in Plaintiff's case. However, the relevant provisions cited in this Opinion also existed in the previous version of the policy. *See* MDOC Policy Directive 06.06.100 (effective Mar. 1, 2013), available at https://web.archive.org/web/20170725084334/http://www.michigan.gov/documents/corrections/06_06_100_412858_7.pdf (visited Oct. 4, 2019).

mitigation of the charges. *Id.* ¶ W. After this hearing, the hearing officer will determine whether the parolee violated his parole and will prepare a written report with findings of fact and conclusions of law, and then submit this report to the parole board. *Id.* ¶ X. The parole board then decides whether to revoke parole.

### 3. Failure to provide written summary of the evidence

Plaintiff complains that he did not receive a "written summary of the evidence to be presented against him" before his parole violation hearing, citing Mich. Comp. Laws § 791.239a(5). However, *Morrissey* does not require that a summary of the evidence be provided to the parolee, either before the preliminary hearing or before the revocation hearing. Instead, it requires *disclosure* of the evidence at the revocation hearing. *See Morrissey*, 408 U.S. at 489. Likewise, the MDOC's policies require disclosure of the evidence at the parole violation hearing. *See* MDOC Policy Directive 06.06.100 ¶ W. Plaintiff does not allege that he did not receive disclosure of the evidence against him. Supreme Court precedent sets the relevant baseline for due process, not state law.

### 4. Failure to state good cause based on evidence in written summary

Plaintiff also contends that the hearing officer at the parole violation hearing never stated "good cause on the record," and found Plaintiff guilty based on "evidence that was not summarized" (Compl., ECF No. 1, PageID.11), relying on Mich. Comp. Laws § 791.239a(6). Here again, Plaintiff is attempting to graft the requirements of state law onto the Fourteenth Amendment. *Morrissey* does not require a statement of "good cause." Nor does it require a finding of guilt based solely on evidence summarized in a written notice. It simply requires a statement of reasons and a description of the evidence relied upon. Similarly, the MDOC's policies require the hearing officer presiding over the parole violation hearing to prepare a written report

8

with findings of fact and conclusions of law. MDOC Policy Directive 06.06.100 ¶ X. A copy of that decision must be given to the parolee. (MDOC Operating Procedure 06.06.115, ECF No. 1-1, PageID.62.) In addition, Plaintiff received written notice of the Parole Board's reason for revoking his parole. (*See* MDOC Parole Board Notice of Action, PageID.66.) It revoked his parole because the hearing officer found him guilty of assaultive and/or intimidating conduct toward a parole agent and his family. (*Id.*) These policies and practices are consistent with *Morrissey*.

### 5. Decision by majority of board members on a three-member panel

Finally, Plaintiff contends that only two parole board members revoked his parole. However, *Morrissey* does not require a particular number of members from the parole board to make a revocation decision. It simply requires a decision by a "neutral and detached body." *Morrissey*, 408 U.S. at 489. Plaintiff does not allege that the officials involved in reviewing his parole violation or revoking his parole were not neutral and detached.

In summary, Plaintiff's due process claim relies solely on requirements set forth in state law. He has not alleged facts from which to infer that the process he received, or that the policies that Defendants are alleged to have approved, fall short of the minimum procedural requirements set forth in *Morrissey*. Thus, he does not state a due process claim.

### IV. State-Law Claims

The Court has original jurisdiction over Plaintiff's claims arising under federal law. To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law

issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's claims asserting a violation of state law will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims under § 1983 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Plaintiff's claims under state law will be dismissed without prejudice because the Court declines to exercise jurisdiction over them.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: October 17, 2019               /s/ Paul L. Maloney
                                      Paul L. Maloney
                                      United States District Judge